792 P.2d 724

**Dennis R. EARDLEY,**
**Plaintiff/Appellant,**

**v.**

**Seymour GREENBERG and Sarah Greenberg, husband and wife; Investors Security Management, Inc., an Arizona corporation, Defendants/Appellees.**

**No. CV–89–0145–PR.**

Supreme Court of Arizona,
En Banc.

May 1, 1990.

Bosco & DiMatteo, P.C. by Carm R. Moehle, Phoenix, for plaintiff/appellant.

William K. Whissen, Phoenix, for defendants/appellees.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Michael S. Rubin, Phoenix, for amici curiae First American Title Ins. Co. of Arizona, Arizona Bankers Ass'n, Arizona Trustees Ass'n, First Interstate Bank of Arizona, N.A. and The Arizona Bank.

| | |
|---|---|
| Seymour and Sarah Greenberg | 10/40ths |
| Albert L. and Barbara A. Flaig | 19/40ths |
| Michael H. and Claudia H. Goodman | 6/40ths |
| Robert S. Leiserowitz | 5/40ths. |

FERNANDEZ, Chief Judge, Court of Appeals.

Plaintiff Dennis Eardley filed suit to set aside a trustee's sale. The trial court upheld the sale, and the Court of Appeals reversed and remanded. 160 Ariz. 518, 774 P.2d 822. We granted review to consider two issues: (1) whether a notice of substitution of trustee must be personally signed by all beneficiaries or whether a duly authorized agent of the beneficiary may sign, and (2) whether the notice of substitution in this case was otherwise defective and resulted in prejudice to Eardley. We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

FACTS

In August 1984, Eardley's predecessor in interest executed a deed of trust naming Action Home Loans, Inc. as beneficiary and Security Title Agency as trustee. Shortly afterward, Action Home Loans assigned its beneficial interest in the deed of trust to the following parties:

Eardley purchased the property in March 1985.

In early June 1986, Seymour Greenberg received three special powers of attorney from the Greenbergs, the Goodmans, and Leiserowitz authorizing him to collect money, sign documents and foreclose on the property. In the power of attorney executed by Seymour and Sarah Greenberg on June 9, 1986, Seymour was appointed attorney in fact for "Sarah and Seymour Greenberg Husband & Wife, JTROS as to their 10/40ths undivided interest." None of the powers of attorney was recorded.

On June 14, 1986, Albert and Barbara Flaig assigned their beneficial interest to the Greenbergs as joint tenants. Seymour was never given a power of attorney from Sarah with respect to that 19/40ths interest.

After Eardley defaulted on the note, Seymour executed a Notice of Substitution of Trustee on October 9, 1986, replacing Security Title Agency with Investors Security Management, Inc. This document is the focus of our attention. Seymour Greenberg signed the notice four times, once as beneficiary and three times as attorney in fact for the Greenbergs, the Goodmans, and Leiserowitz. The new trustee prepared a Notice of Trustee's Sale the same day.

Six days earlier, Eardley's application for a loan to refinance the debt secured by the deed of trust had been approved by First Interstate Bank. However, the title company balked at issuing title insurance. An October 23, 1986 memorandum from the legal department of Security Title Agency outlined the perceived problems as to the notice of substitution of trustee as follows:

1. The form does not satisfy the statu[t]es.

2. All beneficiaries have not joined in the substitution.

3. The statutes do not provide for an agent to sign such substitution for the beneficiaries who have joined.

These concerns were conveyed to the beneficiaries' attorney who responded that the form complied with the governing statute, all beneficiaries had signed the notice of substitution through their attorney in fact, and the execution of the notice of substitution by an authorized agent was proper under the Arizona law of agency. Security Title still declined to issue title insurance, and Eardley's loan never closed. The trustee's sale was held on January 9, 1987, and Seymour and Sarah Greenberg purchased the property.

## PROCEDURAL HISTORY

Three months after the trustee's sale, Eardley filed suit against the Greenbergs and Investors Security Management, alleging that the sale was void because of defects in the notice of substitution of trustee. The parties filed cross-motions for summary judgment, and the trial court entered judgment in favor of the defendants, ruling that the trustee's deed created a presumption of compliance with statutory requirements and that any technical violations were harmless and non-prejudicial and did not contravene the legislative intent of the deed of trust statutes. The court also stated that Eardley's inability to obtain refinancing, "while perhaps furnishing the *reason* for his failure to obtain the property is not a sufficient legal reason for voiding the Trustee's Sale." (Emphasis in original.)

The Court of Appeals reversed, holding that A.R.S. § 33–804(C) requires the personal signature of every beneficiary on the notice of substitution of trustee. The court also ruled that even if the notice could be executed by an agent, Greenberg had failed to establish that he possessed authority from all beneficiaries when he signed the notice of substitution. We disagree with that portion of the opinion construing A.R.S. § 33–804(C) but agree that the Greenbergs failed to present evidence entitling them to summary judgment.

## A.R.S. § 33–804(C)

The statute governing the substitution of trustees in deeds of trust provides in part as follows:

Substitutions shall be made by recording notice of the substitution in the office of the county recorder of each county in which the trust property or some part of the trust property is situated at the time of the substitution. The beneficiary shall give written notice through registered or certified mail, postage prepaid, to the trustor, the trustee and the successor trustee. *A notice of substitution of trustee shall be sufficient if acknowledged by all beneficiaries under the trust deed and prepared in substantially the following form:* ....

A.R.S. § 33–804(C). (Emphasis added.) The remaining portion sets out the form for the notice of substitution. The Court of Appeals read the underscored sentence as "clearly and unambiguously" requiring the personal signature of each beneficiary, in part because of the language of two other sections in Title 33 that expressly allow certain acts to be performed by an attorney in fact.

The principles of statutory interpretation are well known and oft repeated. The goal is to discern the legislative intent behind the statute by considering "the context of the statute, the language used, the subject matter, the historical background, the effects and consequences, and the spirit and purpose of the law." *Martin v. Martin,* 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988). The provisions of a statute should be read in the light of related sections and its "place in the statutory scheme." *Grant v. Board of Regents,* 133 Ariz. 527, 529, 652 P.2d 1374, 1376 (1982).

Following these guidelines, we hold that a notice of substitution of trustee may be executed by a duly authorized agent of a beneficiary. We reach this conclusion for several reasons. First, the statutes that expressly authorize certain acts to be performed by an agent involve acts of some significance in the ownership of property, i.e., its conveyance, § 33–401(A), and the release of an encumbrance upon it by a

secured party, § 33–708. On the other hand, a substitution of trustee is primarily an administrative act of much less importance than a conveyance of title or release of an encumbrance. We can perceive no interest that would be served by allowing an agent to perform acts of great importance while requiring personal performance of ministerial acts such as the substitution of a trustee. Therefore, we infer no legislative intent from the absence of express permission for an agent to execute a notice of substitution of trustee.

Our conclusion is also consistent with the nature and purpose of deeds of trust and the role of the trustee in the statutory scheme. A deed of trust is simply an instrument that conveys property to a trustee "to secure the performance of a contract." A.R.S. § 33–801(5). "In practical effect, a deed of trust is little more than a mortgage with a power to convey upon default." *In re Bisbee*, 157 Ariz. 31, 34, 754 P.2d 1135, 1138 (1988). " '[T]he trustee is generally held to have bare legal title—sufficient only to permit him to convey the property at the out of court sale. All other incidents of title remain in the trustor.' " *Brant v. Hargrove*, 129 Ariz. 475, 480 n. 6, 632 P.2d 978, 983 n. 6 (App.1981), *quoting* Note, *The Deed of Trust: Arizona's Alternative to the Real Property Mortgage*, 15 Ariz.L.Rev. 194, 196 (1973). Indeed, the role of a trustee under a deed of trust is so narrowly circumscribed that this Court has upheld the validity of a deed of trust that failed to name a trustee. *In re Bisbee*, *supra*. Thus, we find nothing in the language of § 33–804(C) or the overall statutory scheme that would preclude a beneficiary from authorizing an agent to execute a notice of substitution of trustee.

Finally, the general principles of agency support the ability of beneficiaries to designate an agent to act on their behalf. The Restatement (Second) of Agency § 17 (1957) states:

> A person privileged, or subject to a duty, to perform an act or accomplish a result can properly appoint an agent to perform the act or accomplish the result, unless public policy or the agreement with another requires personal performance....

We see no legislative intent or public policy that requires personal performance by a beneficiary. Accordingly, we reject the conclusion of the Court of Appeals that the personal signatures of all beneficiaries are required under A.R.S. § 33–804(C).

## SEYMOUR GREENBERG'S AUTHORITY

■ Although the Court of Appeals effectively disposed of this case by holding that the notice of substitution of trustee was defective because all beneficiaries had not personally signed, it also addressed other issues. Eardley argued that the notice of substitution was invalid because Seymour Greenberg did not possess a power of attorney from Sarah with respect to 19/40ths of the beneficial interest when he signed the notice of substitution. As a result, the appeals court found that questions of fact exist as to whether Greenberg had sufficient authority to execute the notice of substitution. We agree with that conclusion.

The Greenberg power of attorney expressly stated that it related to Seymour and Sarah's "10/40ths undivided interest." The Greenbergs subsequently acquired the Flaigs' 19/40ths interest by assignment. The Greenbergs offered no power of attorney from Sarah as to that portion of the interest.

## VALIDITY OF THE TRUSTEE'S SALE

■ The question still remains whether the trustee's sale is fatally flawed because Greenberg failed (or refused) to produce evidence of his authority when challenged to do so by Security Title. In granting summary judgment to the Greenbergs, the trial court found that any technical violations in the sale proceedings did not prejudice Eardley.

Eardley submitted evidence that Greenberg's refusal to clarify the source of his authority was one of the reasons Security Title declined to issue title insurance, thereby precluding Eardley from closing the loan approved by First Interstate. Eardley produced affidavits of employees of both

the title company and the bank in support of his claim of prejudice. Therefore, there is a question of fact as to whether the beneficiaries' refusal to take the corrective measures requested by Security Title caused the resulting loss of the property through the trustee's sale.

Our final question is whether that factual dispute concerns a material fact. The Greenbergs and the amicus curiae urge us to rule that the issue of Greenberg's authority concerns only the principal and the agent, thus depriving Eardley of standing to complain. That argument, however, does not survive close examination.

The trustor, trustee, and beneficiary are inextricably interconnected links in the chain of title to real property. Each has certain rights, legal or equitable, separated from the complete bundle of real property rights. Although a trustee's range of authority is severely limited, the trustee is the holder of legal title. The beneficiary holds an enforceable lien on the property. The trustor possesses the bulk of the bundle of rights, but it is obvious that the trustor's ability to deal with those rights can be effectively eliminated by uncertainties in the chain of title concerning either the beneficiaries or the trustee.

The statutory scheme is designed to insure that the identities of beneficiaries and the authority of a trustee can be ascertained from an examination of the record. A.R.S. § 33–804 requires a notice of substitution to be recorded in "each county in which the trust property or some part of the trust property is situated." A.R.S. § 33–401(D), in effect at the time of these events, required that "every deed or conveyance of real property, or an interest therein" from a grantor who held the property as an agent or trustee should also name the beneficiaries or principals. Although that section has been repealed, A.R.S. § 33–404(C) requires any trustee who receives actual knowledge of a change in beneficiary to record a notice of the change in the county in which the property is located. Finally, any person who receives an assignment of beneficial interest and does not record it is in jeopardy of having the assignment declared invalid as against a subsequent purchaser for value without notice. *See* A.R.S. § 33–411(A).

We thus conclude that the trustor has standing to inquire into and raise objections about the process by which a trustee has been substituted. We also conclude that Eardley has raised material questions of fact in this case that preclude the entry of summary judgment.

## DISPOSITION

Section I of the opinion of the Court of Appeals is vacated. The matter is reversed and remanded for further proceedings consistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

CORCORAN, J., did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, LLOYD FERNANDEZ, Chief Judge, Court of Appeals, Division Two, was designated to sit in his stead.